**Carl W. DALTON, Jr., Appellant,**

v.

**Cornel LeBLANC, Appellee.**

**No. 7825.**

United States Court of Appeals Tenth Circuit.

Aug. 9, 1965.

Rehearing Denied Sept. 13, 1965.

**96**

William B. Jones, Tulsa, Okl., for appellant.

Norma F. Wheaton, Thomas R. Brett, Tulsa, Okl., for appellee.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and DAUGHERTY, District Judge.

DAUGHERTY, District Judge.

This appeal involves a determination as to which of two rival claimants is entitled to the proceeds of a life insurance policy. The First United Life Insurance Company of Gary, Indiana, issued a policy of life insurance to Anthony Joseph Blanchard. Cornel LeBlanc, one of the rival claimants and a nephew of Blanchard, was the named beneficiary. The insurance policy authorized the insured to change the beneficiary upon written notice to the Company, accompanied by the policy for endorsement of the change thereon by the Company, and un-

less so endorsed the change will not take effect.[1]

The insured wrote the Company a letter requesting a change of beneficiary from LeBlanc to a friend, Carl W. Dalton, Jr., the other rival claimant. The policy did not accompany the letter and was never furnished to the Company. At all times the policy was in the possession of the insured. This letter also forwarded to the Company three coupons which the insured desired redeemed. Four days later the Company wrote the insured in response to the above mentioned letter, sending him the proceeds of two of the three coupons and returning the third coupon with advice that it was not yet valid. This answering letter was sent by the accounting department of the Insurance Company. In this letter no mention was made regarding the requested change in beneficiaries. No further communications were had between the insured and insurer. The insured was killed in an accident approximately six months after this exchange of letters.

This litigation eventually followed in which the Company paid the policy proceeds into court and was discharged of all liabilities by agreement of the parties. The matter was then submitted to the court for decision on Motions for Summary Judgments filed by LeBlanc and by Dalton with the factual stipulations contained in the pretrial order. The trial court held in favor of LeBlanc and this appeal was taken by Dalton.

 It is well settled that a change of beneficiary can only be effected by following the method set out in the insurance contract. Carson v. Carson, 166 Okl. 161, 26 P.2d 738. However, a liberal con-

---

1. The change of beneficiary provision of the policy reads as follows:

"Change of Beneficiary—The Insured may from time to time change the beneficiary unless otherwise provided herein or by endorsement hereon, provided that, if there be an existing assignment of this Policy, consent of the assignee to such change shall be required. Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by this poli-

cy for endorsement of the change hereon by the Company, and unless so endorsed the change shall not take effect. After such endorsement, the change will relate back to and take effect as of the date the Insured signed said written notice of change whether the Insured be living at the time of such endorsement or not but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office."

struction should be given to the policy provisions regarding a change of beneficiary if the intent of the insured is clear and the insured did all reasonably within his power to effectuate the change. O'Neal v. O'Neal, 193 Okl. 146, 141 P. 2d 593. Also see Roberts v. Johnson (10 C.A.) 212 F.2d 672, and Bowser v. Bowser, 202 Okl. 97, 211 P.2d 517. It is also fundamental that an insured is chargeable with knowledge of the terms of his insurance policy, and has the duty to read and know the contents thereof, and is bound by the legal effect of its terms and provisions. Badgett v. Oklahoma Life Insurance Co., 176 Okl. 86, 54 P.2d 1059.

Employing these legal principles, the trial court found that the insured had not done all reasonably within his power to effectuate the change of beneficiary since at all times he had the insurance policy in his possession and could have forwarded the same to the Company for the required endorsement thereon of the desired change as prescribed by the terms and provisions of the insurance contract itself.

In O'Neal, supra, the insured wanted to change his beneficiary from wife to sister. He so wrote the Company. The Company advised him of the need to send it the policy. The policy was in the possession of the wife of the insured and not in the possession of the insured. The Company then with this knowledge asked the insured for the address of the wife in order that it could request the policy from her. This address was furnished. The Company wrote the wife but the insured died before she received the request. The evidence was in dispute regarding a request by the insured to his wife for the policy before he sent in his application for a change of beneficiary. The trial court resolved this disputed issue of fact in favor of the wife to the effect that no such request was ever made on the wife for the possession of the insurance policy by the insured prior to his death. On these factual findings the court held that the insured had not done all reasonably in his power to effectuate the desired change of beneficiary.

In Carson, supra, the insured wanted to change his beneficiary from wife to mother. A requested change was sent to the Company. The Company responded requesting the policy for the required endorsement of beneficiary change thereon. The wife had possession of the insurance policy. The evidence was in conflict about the insured making demand on the wife for the insurance policy. An attorney friend of the insured said he so wrote the wife. The wife denied getting this letter and denied any request or demand on her by anyone for the insurance policy prior to the death of the insured. The court resolved this evidentiary dispute in favor of the wife and held that the insured had not done all reasonably within his power to effect the desired change of beneficiary and thereby had abandoned the same.

In Bowser, supra, a former wife of the insured had possession of the policy in which she was the named beneficiary. The insured desired to change his beneficiary from the former wife to his present wife and his three children. In a change of beneficiary application to the Company, the insured advised the Company that his former wife had the policy. The Company called for the policy to effectuate the desired change of beneficiary. Thereupon, the insured demanded the policy from his former wife, without success, obtained the advice of an attorney with reference to his predicament and eventually filed a lawsuit against his former wife for possession of the insurance policy, but the insured died shortly after filing such suit. The wife contended that the policy was accessible to the insured at all times in a drawer in their former home. The court, however, found that in fact the wife had the possession of the insurance policy and further that the insured had done all reasonably possible to effectuate the change of beneficiary and approved the change minus the policy under the exception to the general rule that the mode set out in the policy must be followed to effectuate a change of beneficiary.

■ In the case before us the insured did not have the difficult problem the insureds had in O'Neal, Carson and Bowser. Here, Blanchard, the insured, had physical possession of the insurance policy at all times, and in the policy was a pertinent paragraph seting out and explaining the prescribed procedure to be followed by the insured to effectuate a desired change of beneficiary. All Blanchard had to do was read the policy which he had in his possession and follow its provisions by forwarding the application to change the beneficiary, accompanied by the insurance policy, to the Company as required by the policy itself to effectuate or bring about a desired change of beneficiary. The trial court held that Blanchard had not done all reasonably within his power to effectuate a change of beneficiary in accordance with the insurance policy's own requirements, and we agree. In short, he had failed to read his policy and he had failed to forward the policy to the Company for the endorsement of change. Both were within his unquestioned capabilities.

But there is another facet to this litigation. Dalton asserts that the Insurance Company waived the policy requirement that the policy be furnished to it to effectuate a change in beneficiaries and is estopped to deny an effective change in beneficiaries because the Company failed to write or notify Blanchard when he requested the change of beneficiary without furnishing the insurance policy that he should forward the policy to the Company for an endorsement thereon changing the beneficiary as required by the policy provisions.

■ The authorities hold that the change of beneficiary provisions by which a mode or method of changing beneficiaries is prescribed in an insurance policy are for the protection of the insurance company to avoid double liability, and that the company may waive these provisions prior to the time that interests may become vested in the proceeds of the insurance policy by the death of the insured. Carson v. Carson, supra.

In O'Neal, Carson and Bowser, supra, the question of such a waiver by the insurance company was of little or no concern because in each case the insurance company requested that it be furnished with the insurance policy for the purpose of endorsing the desired change of beneficiary. In the case before us the insurance company received the requested change of beneficiary from the insured without the policy and then remained silent, not answering the letter containing the requested change of beneficiary except as to the other matter (coupons) contained therein.

■ The insurance policy involved here contained a provision that the insurance contract could not be varied or altered or its conditions waived or altered in any respect except by the written agreement of the Company.[2] There is no such written agreement in this case. Moreover, to constitute a waiver there must be an intentional relinquishment of a known right. 56 Am.Jur., Waiver, Sec. 12. The trial court found that here there was no evidence that the Company intended to waive the provision in the policy calling for the surrender of the insurance policy in order to effectuate a change of beneficiaries, and points out that the insurance policy did not require a demand from the Company for the policy and that mere silence is not a waiver un-

2. This provision in the contract reads as follows:

"The Contract—This Policy, together with the application therefor, shall constitute the entire contract between the parties thereto. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall void this Policy or be used in defense of any claim hereunder unless it is contained in the written application therefor, copy attached and made part hereof. No agent can make, alter or discharge this contract or extend the time for payment of premiums, nor can this contract be varied or altered or its conditions waived or altered in any respect except by the written agreement of the Company in compliance with the law of the State in which the contract is issued, signed by the President, a Vice-President, or Secretary, whose authority will not be delegated."

less there is a duty or obligation to speak. 56 Am.Jur., Waiver, §§ 12 to 17, incl. We must agree with this position for the prescribed duty here was on the insured by virtue of the provision of the insurance contract. And, the payment of the policy proceeds into court by the Company after this litigation was initiated (and of course after the death of the insured) does not constitute a waiver under Oklahoma law. Carson v. Carson, supra; Harjo v. Fox, 193 Okl. 672, 146 P.2d 298, 302.

Closely akin to the claim of waiver is the claim of equitable estoppel raised by Dalton. In the absence of a duty to speak, there can be no estoppel. The Company did not affirmatively act to form the basis of an estoppel. There being no duty to act and the responsibility involved being placed squarely on the insured by the insurance contract, mere silence by the Insurance Company will not permit the application of estoppel in this matter. Sarkeys v. Russell, Okl., 309 P.2d 723.

The case is affirmed.