**Carrie Aldridge GRAYSON, Appellant,**

v.

**Charles W. GILLEY, Appellee.**

Court of Appeals of Kentucky.

June 30, 1969.

Robert Lee Rose, Grant & Rose, Daniel T. Yates, Winchester, for appellant.

Alton S. Payne, Winchester, for appellee.

PALMORE, Judge.

Appellant, Carrie Grayson, is the widow and appellee, Charles Gilley, was the employer of Courtland Grayson, who died on March 17, 1967, as the result of a self-inflicted bullet wound. The purpose of this litigation is to determine which of them is entitled to the proceeds of three insurance policies on Grayson's life. Mrs. Grayson appeals from a summary judgment in favor of Gilley.

The facts are substantially undisputed. At the time the Graysons were married, in 1947, he owned the policies in question. In due course he caused Mrs. Grayson to be designated as the beneficiary under each of them. In July of 1966 Mrs. Grayson filed suit for divorce and obtained a restraining order, after which she continued to occupy the home and Mr. Grayson lived elsewhere. While the divorce suit was pending (it was never completed) Grayson called on the local agent of the insurance company for the purpose of changing the beneficiary. He did not have possession of the policies, so the agent gave him some forms to be signed by himself and the beneficiary, Mrs. Grayson. He later returned to the agent's office and reported that he had been unable to get the forms signed. His attorney then wrote the insurance agent and furnished an affidavit by Grayson to the effect that he was unable to find the policies but was of the opinion that his wife had them, and that he desired to name Gilley as the beneficiary. The agent provided printed change of beneficiary forms, which Grayson duly completed, signed and re-turned and which were then forwarded, with the affidavit, by the agent to the insurance company. These documents were received by the insurance company on December 2, 1966. No further action of any kind was taken between that time and March 17, 1967, the date of Grayson's death.

As it developed, the policies were in the Grayson home and were produced by Mrs. Grayson after her husband's death.

Each of the policies required that a change in beneficiary be effected by written notice to the company, accompanied by the policy for endorsement of the change by an executive officer of the company, and provided that unless so endorsed the change would not take effect. A paragraph on the back of the change of beneficiary forms provided further that the request for change would take effect "when same is acknowledged in writing by the Company," etc. In this case there was neither endorsement nor acknowledgement, but an executive of the insurance company admitted that its standard procedure in disposing of a request for change signed by the owner but not by the beneficiary, and not accompanied by the policy, was to file and hold it in limbo until a claim arose.

Able counsel for Mrs. Grayson recognize that this court has been liberal in construing the requirements of life insurance policies with respect to a change of beneficiary and has followed the rule of substantial compliance. "These seeming exceptions to the usual rule have been characterized as instances in which the insured has 'substantially complied' with the policy—and has done 'all' or 'about all' he could do to make the beneficiary change effective." Marshall v. Marshall, Ky., 399 S.W.2d 487, 489 (1966). They stress the significance of that portion of the language just quoted which reads, *"and has done 'all' or 'about all'* he could do to make the beneficiary change effective," (emphasis added), and urge that Grayson did not do all he could have done, because he never asked his wife for the policies. Grayson, of course, was

not here to say whether he had asked her. Mrs. Grayson testified that he had not. There was also evidence to the effect that Grayson had a key to the house and on at least three occasions during the time of their separation did in fact enter the home for the purpose of securing personal belongings.

Under a comparable fact situation the Supreme Court of Oklahoma, in O'Neal v. O'Neal, 193 Okl. 146, 141 P.2d 593 (1943), held that "whether or not a demand was made by the insured would be very material to a legal conclusion that the insured did all within his power to effect a change of beneficiary in compliance with the requirements of the provision of the policy and the demand of the company thereunder." We are of the opinion, nevertheless, that our law is not so strict.

In the very recent case of Vaughn v. Baker, Ky., 438 S.W.2d 517 (rendered March 7, 1969), it was pointed out that in Marshall v. Marshall, supra, "the insured did not do all he could have done, but he did everything that he thought and believed was required of him. This court said that was sufficient under the circumstances." We come to the same conclusion in this case.

Grayson's affidavit included a statement that he would "make all efforts to obtain possession thereof [the policies] by Court proceedings, if necessary," from which it may be argued that he knew, when he took his life, that he had not done all the insurance company required of him in order to change the beneficiary. We believe, however, that this would be a highly technical and unrealistic basis on which to cast a decision of the case. The affidavit was not drawn by himself, but by a lawyer. Its as-

surance that he would try or continue trying to get hold of the policies did not imply that he understood the change of beneficiary would be contingent on the success of his efforts. As a matter of fact, the change of beneficiary forms were executed and submitted more than a month after the affidavit was signed.

That Grayson had entered the house on several occasions is not of vital import. He may have looked for the policies and failed to find them. He may have been in a hurry, or he may simply have wished to avoid trouble or embarrassment. We can very nearly take judicial notice of the probability that his poking about the premises for the avowed purpose of finding and removing life insurance policies on which his estranged wife was the beneficiary would provoke hostilities of some degree. Certainly it cannot be deduced that his failure to obtain the policies during one of these visits proceeded from irresolution or an uncertainty of purpose with regard to the change of beneficiary.

Under the circumstances we think it is quite likely that the ordinary layman would believe, and the trial court could reasonably infer that Grayson did believe, he had done all that was necessary to accomplish the change. And in this regard the fact that during the remaining months of Grayson's life after he had submitted the forms the insurance company kept silent as a tomb, saying neither yea nor nay and requesting no further information, is not without significance. We firmly concur in the conclusions and judgment of the trial court.

The judgment is affirmed.

All concur.